| | | |
|---|---|---|
| United States District Court | | Southern District of Texas |

| | | |
|---|---|---|
| Pat Raborn, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| versus | § | Civil Action H-06-3950 |
| | § | |
| Inpatient Management Partners, Inc., | § | |
| | § | |
| Defendant. | § | |

## Opinion on Summary Judgment

1. *Introduction.*

   A small company facing financial difficulties reorganized and fired several workers. One worker says she was fired because she had testified against her employer in a separate investigation. Because the company did not treat her adversely – instead having promoted her twice after the investigation, she will lose.

2. *Background.*

   Starting in the fall of 1996, Pat Raborn worked as a receptionist at Inpatient Management Partners, Inc. – a small company that assisted doctors in their placement and paperwork. Over the next four years, Inpatient promoted Raborn twice to managerial jobs.

   Raborn supervised several workers at Inpatient, including Sophie Martinez and Sandra Williams. In February of 2003, Martinez and Williams sued Inpatient for race discrimination. The Equal Employment Opportunity Commission investigated their charges by interviewing thirteen of Inpatient's workers. Raborn was one of them, and she submitted an affidavit supporting that there had been discrimination at Inpatient.

   About three weeks after Raborn had testified against her company, Raborn said that her supervisors, Dr. Robert Teague and Harris "Buddy" Miers, began complaining about her performance and warned her that her job may no longer exist.

   Over the next year, Inpatient promoted Raborn two more times; she became manager of physician recruitment and then director of license paperwork.

A couple of months later, Williams named Raborn as a witness in her suit against Inpatient. A few weeks later, Inpatient's consultants advised it to subcontract two of its departments to Houston Medical Records. One of the departments was license paperwork, and Inpatient discharged Raborn along with several others.

3.  *Dispute.*

Raborn says that she was fired as retaliation for her support in the investigation of Williams against Inpatient. Inpatient says it is entitled to judgment because it did not retaliate against Raborn; it had promoted Raborn several times, including twice after she participated in the Williams investigation.

4.  *No Retaliation.*

Along with retaliation, Raborn had complained that Inpatient violated her civil rights under these sections of the law: 42 U.S.C. §§ 1981, 1983, and 1988. Raborn has effectively abandoned them because she did not address them in a responsive pleading.

Further, Raborn cannot establish retaliation because of her history of promotions; Inpatient's financial conditions surrounding its decision to subcontract her department; and the missing causal link between her participation and discharge.

   A.   *History.*

Raborn says that because she had aligned herself with her subordinates during the Williams investigation, Inpatient fired her. The fact is that Inpatient did not fire Raborn in 2003 – when she submitted an affidavit supporting Williams. Instead, Inpatient promoted her twice in 2003, and increased her salary about fifteen percent.

Raborn also says that once she participated in the Williams investigation, Meiers had embarrassed her. She says that Meiers disrespected her when he introduced her co-workers by their titles at a meeting and said her position had no description. Even if it was disrespectful, insensitive remarks and other rude treatment do not qualify as retaliation. *Burlington Northern & Sante Fe Ry. v. White*, 548 U.S. 53, 68 (2006)(an employee is not immunized from petty slights, minor annoyances, or simple lack of good manners in the workplace because they are not adverse job actions).

Even though Raborn may have had earlier problems with a few of her supervisors, she testified that she was getting along with everyone at Inpatient for almost a year before her

discharge. Raborn has no facts, therefore, to substantiate that she had been treated adversely in a material condition of her employment at Inpatient.

B.   *Decision.*

Dr. Phil Sanger, the controlling shareholder of Inpatient, was the only one with the authority to decide about Raborn's job or others' jobs. In the winter of 2004, when Inpatient started to struggle financially, it sought the advice of consultants. Because Houston Medical Records would not charge Inpatient for credentialing, the consultants recommended to Doctor Sanger that Inpatient should discharge the workers in that department and contract the credentialing. These three consultants were outsiders; none of them had known the contents of Raborn's statements in the Williams investigation or other employee conflicts when they had advised Doctor Sanger how to reorganize the company.

Because it is undisputed that the ineffectual administrative and financial conditions of Inpatient at the time were genuine, Doctor Sanger's decision to discharge Raborn was a business one. More important, Inpatient fired several people, not just Raborn. His decision was not tinged with spite against Raborn.

C.   *Causation.*

Raborn assumes that because she participated in the Williams interview and submitted a supporting affidavit, Inpatient fired her in retaliation. She also assumes that because Inpatient had fired her seventeen days after Williams named her as a witness in her suit, all of these events are connected. Raborn has no facts, only the chronology – after something, therefore, because of it. This is a necessary condition but not a sufficient one *Antwi v. CVS Corp.*, C.A. No. G-07-348, 2008 U.S. Dist. LEXIS 13744, at *2 (S.D. Tex. Feb 25, 2008)(Hughes, J.)(holding sequence alone is insufficient to establish retaliation); *see also* Morris R. Cohen, *An Introduction to Logic and Scientific Method* 271-72 (Read Books 2007) (1934).

When looking at the chronology alone, her claim of retaliation negates itself because Inpatient never treated her adversely. For example, before Williams and Martinez had formally complained, Raborn says that she was known at Inpatient for openly advocating against minority mistreatment. Even though Inpatient knew of her opposition to some management's policies, it did not fire her.

Inpatient also did not fire her after she had participated in the Williams interview. Although Raborn admits that Inpatient did not know the contents of her statements in the interview, she assumes that Inpatient knew them because her interview had lasted the longest. When asked about her conclusion – if she knew the length of the other Inpatient workers' interviews with the commission – she offered no substantiating facts. (Pat Raborn Dep. 70: 17-25; 71: 1-10, June 27, 2008.) Assuming Raborn is correct – that Inpatient did know the contents of her statements in the interview – it still never fired her. She worked at Inpatient for two more years and was promoted two additional times.

Inpatient did not fire Raborn either immediately after participating in the interview or submitting her affidavit a few weeks later. Raborn has no facts of compelling, temporal proximity between her participation and discharge to support a claim of retaliation. Even if Inpatient had fired her then, temporal proximity does not establish pretext. *See Strong v. Univ. Health Care Sys.,* LLC, 482 F.3d 802 (5th Cir. 2007)(no causation found in three and one-half month span from employee's complaint to discharge). More important, Raborn's claim of retaliation arising from the date of the interview is barred under limitations because the interview was in February of 2003, and she did not complain to the commission until May of 2005.

Raborn also says that Inpatient's retaliation had culminated when her name was revealed as a witness in Williams's suit in November of 2004. Because the consultants have testified that they did not know that Raborn would be a witness when they recommended her discharge, her inference of retaliation has no predicate fact. Even if they or Doctor Sanger did know, the decision-makers' knowledge alone does not establish pretext. *See McCoy v. City of Shreveport*, 492 F.3d 551,562 (5th Cir. 2007)(no pretext when knowledge of complaints alone is followed by adverse employment). You may fire people who complain about equal opportunity; you just may not fire them because of those complaints.

5. *Independent Basis.*

Inpatient made management changes as well as staff changes; Raborn's department was not the only one that was eliminated on the consultants' recommendation. In essence, Raborn has no data to suggest that (a) the company was not overstaffed;(b) it was not finding itself financially constrained; or (c) the consultants' evaluation was fictitious.

Because Inpatient had a legitimate, non-discriminatory reason to explain its discharging of her, Raborn has no factual basis to show a motive that Inpatient fired her in retaliation. She only has assumptions of possibilities.

6.  *Conclusion.*

Pat Raborn will take nothing from Inpatient Management Partners, Inc.


Signed on April 3, 2009, at Houston, Texas.

                                                    Lynn N. Hughes
                                       United States District Judge